UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:20-CV-00146-EBA

TAMIKA WADDY,                                                                              PLAINTIFF,

V.                            **MEMORANDUM OPINION AND ORDER**

ANDREW SAUL,
Commissioner of Social Security,                                                        DEFENDANT.

**INTRODUCTION**

Tamika Waddy filed an application for supplemental security income on September 9, 2015, alleging that she became disabled on May 26, 2015. [R. 17-1 at p. 159]. Her application was denied initially and on reconsideration. [*Id*. at p. 16]. Her case was then heard before an Administrative Law Judge [ALJ] on June 28, 2018. [*Id*.]. In a decision entered on December 4, 2018, the ALJ found that Waddy was not disabled under section 1614(a)(3)(A) of the Social Security Act. [*Id*. at p. 25]. In evaluating the evidence in this case, using the five-step sequential evaluation process, the ALJ found at step one that Waddy has not engaged in substantial gainful activity since the alleged onset date of her disability. *See* 20 C.F.R. § 416.971 *et seq.* At step two, the ALJ determined that Waddy had medically determinable severe impairments of morbid obesity, bilateral foot pain, asthma, right shoulder labral tear status-post arthroscopic repair, hypertension, bone spur on foot, left wrist tendonitis, and left carpal tunnel syndrome. [*Id*. at p. 18]. The ALJ also found that Waddy's medically determinable mental impairments of depression and anxiety, considered separately and in combination, were not severe as they did not cause more than minimal limitation in her ability to perform basic mental work activities. [*Id*.]. Waddy argues that the ALJ erred in finding that her mental impairments were not severe. [R. 22].

1

Even though the ALJ found at step two that Waddy's mental impairments were not severe, he continued on to step three to consider whether her impairments met or equaled one of the impairments listed in the regulations. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. Finding they did not, the ALJ then assessed her "residual functional capacity" (RFC). 20 C.F.R. §§ 416.920(e), 416.945. The ALJ determined that Waddy had

> … the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a) such that the claimant can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, operate foot controls, or be exposed to moving mechanical parts. Claimant can never climb ladders or scaffolds or crawl. Claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Claimant must avoid all exposure to unprotected heights.

[R. 17-1 at p. 20]. Although the ALJ considered Waddy's mental impairments in his step three analysis, he ultimately found that the impairments not severe enough to affect her residual capacity to work. The ALJ went on to find that, while Waddy was unable to perform any past relevant work, she could perform other jobs such as document preparer, food cashier, and sorter, all of which existed in significant numbers in the national economy. *See* 20 C.F.R. §§ 416.969 and 416.969(a). Thus, the ALJ determined that Waddy was not disabled.

Plaintiff's sole argument on appeal to the District Court is that the ALJ's step two determination that she does not suffer from a severe mental impairment is unsupported by substantial evidence where the ALJ failed to properly weigh the opinion evidence in the record. [R. 22]. Specifically, Plaintiff argues that the ALJ failed to properly consider the opinion of Dr. Cristi Hundley that Plaintiff's mental impairments caused a marked limitation on her ability to function. [R. 22-1 at p. 10]. Plaintiff also argues that the ALJ mischaracterized evidence in the record when making findings that Plaintiff did not seek or receive significant ongoing treatment for her anxiety. [*Id.* at p. 13]. Plaintiff argues that these errors led the ALJ to improperly determine an RFC which did not contain limitations based on Plaintiff's alleged mental impairments. [*Id.* at

2

p. 13]. She has moved for judgment on the pleadings, asking that the ALJ's opinion be reversed and her case be remanded for lack of substantial evidence. [R. 22]. The Commissioner also moves for summary judgment contending that the ALJ did not commit reversible error and asserts that the ALJ's decision is supported by substantial evidence. [R. 24].

For the reasons that follow, this Court finds that the ALJ's determination was supported by substantial evidence, and thus will deny Plaintiff's motion for judgment on the pleadings and grant the Commissioner's motion for summary judgment.

**LEGAL STANDARD**

Pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), this Court may review the record for the limited purpose of inquiring into whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 229 (1938)); *Sias v. Secretary*, 861 F.2d 475 (6th Cir. 1988). In conducting its review, a court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Similarly, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714. Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

## ANALYSIS

As an initial matter, the Sixth Circuit has acknowledged that a failure to find a certain impairment severe is a harmless error where the ALJ went on to characterize other impairments as severe and thus continued to step three. *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Mariarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe). Here, although the ALJ found that Waddy's mental impairments were not severe, he continued to the next steps because he found that Waddy suffered from several other impairments which he did classify as severe. Further, the ALJ considered both Waddy's severe and non-severe impairments in his determination of her residual capacity to work. *See* [R. 17-1 at p. 20-24]. Thus, it is technically unnecessary to determine whether the ALJ erred in failing to consider Waddy's mental impairments as severe, as the failure to do so does not constitute reversible error. However, Waddy argues that the ALJ's mischaracterizations of the record related to Waddy's mental impairments made at step two permeate the entire record, resulting in an RFC which is not supported by substantial evidence because it lacks any limitations due to Waddy's mental impairments. Therefore, the Court will substantively address Waddy's argument that the ALJ erred by finding Waddy's mental impairments non-severe.

<u>The ALJ's Step Two Determination is Supported by Substantial Evidence</u>

In the Sixth Circuit, the severity determination is "a de minimis hurdle in the disability determination process." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1998). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* In determining whether a mental disorder should

be classified as severe, the ALJ should look at four areas of mental functioning, also known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R., Part 404, Subpart P, Appendix 1; 20 C.F.R. § 416.920(a)(c)(3). In order to satisfy the paragraph B criteria, claimant must be found to have either "extreme" limitation in one area or a "marked" limitation in two areas. *Id.*

The ALJ considered each of the four paragraph B categories, making the following findings:

> The first functional area is understanding, remembering, or applying information. In this area, the claimant has no limitation. Claimant regularly used her phone, used a computer, played games, and watched movies. Claimant was able to read, write, and perform basic math.
>
> The next functional area is interacting with others. In this area, the claimant has a mild limitation. Claimant checked in on neighbors, had a close friend, and was able to use public transportation and shop in stores as necessary. Claimant used social media.
>
> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has a mild limitation. Claimant performed regular pet care. Claimant regularly used her phone, played games, and watched movies. Claimant was able to read, write, and perform basic math.
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. Claimant was able to prepare meals and perform household chores. She performed her personal care independently.

[R. 17-1 at p. 19].

Plaintiff contends that these findings were not supported by substantial evidence and that they are contradicted by other evidence in the record, including the opinion of consulting psychiatrist Dr. Hundley, which is discussed further in this opinion. [R. 22-1 at p. 10]. However, Plaintiff acknowledges that the ALJ is not required to address every piece of evidence in the record, and instead must only "make a logical bridge between the evidence relied on and the conclusions

5

reached." *Warfield v. Berryhill*, 2019 U.S. Dist. LEXIS 112272, at *7 (E.D. Ky. July 8, 2019); *Pollaccia v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 6901, at *15 (E.D. Mich. Jan. 6, 2011).

Here, the ALJ did draw a logical connection between the evidence and his conclusions. Plaintiff testified at her hearing that she was able to prepare a meal, wash dishes, do laundry, vacuum, pay bills, go grocery shopping, and take care of her pet cat. [R. 17-1 at p. 43-44]. She testified to spending four to five hours a day playing video games on her phone. [*Id.* at 45]. She also testified that she enjoyed going to events with friends, but that she had not gone to any events recently due to issues with mobility and trouble walking. [*Id.*]. She did testify that she had some trouble with memory, particularly that she had trouble keeping up with things and had to "write everything down." [*Id.* at p. 43]. During her examination by Dr. Hundley, Plaintiff stated that she used Facebook and visited with her close friend. [R. 17-1 at p. 355].

This evidence supports the ALJ's findings that Plaintiff had a mild limitation interacting with others, as she reported that she maintained interpersonal relationships. Her testimony that she had trouble with memory, but combatted this by writing down information, supports the finding that she is only mildly limited in her ability to concentrate, persist, and maintain pace. Her testimony that she performs a wide variety of daily tasks including personal care and shopping indicates that she has no limitation in her ability to adapt or manage herself. The ALJ also found that Waddy had no limitation in her ability to understand, remember, or apply information. Waddy's testimony that she had trouble remembering things could support a finding that she has a mild limitation in that category. However, a mild or even marked limitation in this category would not have resulted in an overall finding that her impairment is severe, as there is sufficient evidence to support the ALJ's determinations that Waddy was either not limited or only mildly limited in the other three categories. Further, the sole statement that she sometimes has trouble

with memory does not support a finding that Waddy is seriously limited in her ability to understand, remember, or apply information, especially when taken with the other evidence that Waddy does not have any limitation in this area. Thus, the ALJ's determination that Waddy's mental impairments of anxiety and depression were not severe at step two is supported by substantial evidence.

Further, the mischaracterizations that Plaintiff argues form the basis of the ALJ's determination are unfounded. Plaintiff specifically takes issue with the ALJ's statement that "Claimant did not seek or receive significant ongoing treatment for any psychological condition and was never hospitalized for psychiatric distress." [R. 17-1 at p. 18]. Plaintiff states that the ALJ failed to discuss her anxiety treatment including counseling and medication from her doctor. [R. 22-1 at p. 13]. The record reflects that Plaintiff complained of anxiety during a visit to the emergency room in September 2015. [R. 17-1 at p. 584]. Following that visit, during the period of October 2015 through December 2015, Waddy was treated by social workers and nurse practitioners for anxiety. [R. 17-1 at p. 447-464]. Later, during a visit with her primary care physician in August of 2017, Plaintiff complained of an "internal shaking" which "she thought she had gotten over." [R. 17-1 at p. 375]. Because Plaintiff sought treatment for her anxiety intermittently throughout the relevant time period, it was not necessarily a mischaracterization for the ALJ to state that she "did not seek or receive significant ongoing treatment." Instead, this is conclusion based on evidence in the record. Further, Plaintiff's contention that the ALJ did not discuss her treatment is unfounded, as the ALJ specifically mentioned Plaintiff's treatment by social workers in 2015. [R. 17-1 at p. 21]. Regardless, the ALJ is not required to discuss every piece of evidence in the record. *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion,

so long as they consider the evidence as a whole and reach a reasoned conclusion."). Here, the ALJ properly considered the evidence in the record and determined that Plaintiff's anxiety was not a severe impairment, and his determination was based on substantial evidence.

The ALJ Properly Weighed Dr. Hundley's Opinion

Plaintiff also argues that the ALJ improperly weighed the opinion of Dr. Cristi Hundley. In October of 2015, Dr. Hundley was referred by the Kentucky Department for Disability Determination to conduct a mental status evaluation on Waddy to gather further information for her claim. [R. 17-1 at p. 353]. Dr. Hundley found that her speech was coherent and relevant and that she was alert, pleasant, and cooperative. [*Id.*]. Dr. Hundley described her mood as "dysphoric and at times anxious," and stated that she did not present any lability or distractibility. [*Id.*]. At some point during the exam, Waddy noticed a spider in the window and became visibly "vigilant and anxious." [*Id.*]. Waddy was able to remember her activities from the day before as well as how she got to the exam. [*Id.*]. She was unable to name four presidents after 1950, naming "George Washington, Lincoln, Bill Clinton, and Obama," but she could remember the last school she attended. [*Id.* at p. 354]. Waddy was able to point out correct similarities between objects in three different trials but did misinterpret the idiom "strike while the iron is hot" as "hurry up and iron their clothes." [*Id.* at p. 354]. She stated that she paid bills but required help from her father and boyfriend doing personal hygiene tasks, housekeeping, and grocery shopping due to the fact that she recently underwent surgery. [*Id.* at p. 354]. She reported that she spent most of her day watching television and using the computer, often on social media. [*Id.* at p. 355]. She also reported having one close friend who she tried to visit once a week. [*Id.*]. She reported physical symptoms of anxiety such as internal shaking, loss of sleep, and an agitated or antsy mood, which occurred

in episodes that lasted 3-4 days at a frequency of one or two times a month. [*Id.*]. Dr. Hundley made the following opinion:

> Ms. Waddy's ability to understand and remember simple instructions is good and her ability to maintain attention and concentration is fair. However, in a work setting these abilities may decompensate. Her ability to interact appropriately in a work setting is moderately to markedly limited and her ability to handle the stresses typically associated with a work environment is moderately to markedly limited. A physician will need to comment further upon her specific medical conditions, her prognosis for the future, and any limitations these conditions put on her ability to remain employed. If she is awarded funds, she appeared [*sic*] capable of managing them at this time.

[*Id.*].

When discussing his reasoning for finding that Waddy's mental impairments were not severe, the ALJ addressed Dr. Hundley's report, stating "Mental status examination in late 2015 was essentially unremarkable but for mood abnormalities." [R. 17-1 at p. 18]. In step three, the ALJ went on to say that,

> The opinion of consultant Hundley finding the claimant to have moderate to marked limitations is given little weight as Dr. Hundley's mental status examination was essentially unremarkable but for mood abnormality, the claimant indicated engaging in a wide range of activities of daily living, the claimant did not seek or receive consistent medical care for any mental impairment, and the claimant did not testify to having limitations in mental functioning.

[R. 17-1 at p. 23]. Plaintiff argues that the ALJ erred in giving little weight to Dr. Hundley's findings that her ability to interact in a work setting and to handle stress from a working environment were markedly limited. [R. 22-1 at p. 10-13].

The agency regulations applicable to the instant case lay out certain factors that an ALJ must consider when evaluating a medical opinion. *See* 20 C.F.R. § 416.927(c). The ALJ's decision must contain specific reasons supported by evidence in the record for the weight given to an opinion. As such, an ALJ must simply provide good reasons for the weight he gives a medical opinion. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). For an examining

but non-treating source such as Dr. Hundley, the source is not entitled to controlling weight, but is generally given more weight than a non-examining source. *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017) (finding that a consulting examiner was not a treating source entitled to controlling weight); see also 20 C.F.R. § 416.927(c). In addition to this examining relationship, the ALJ may consider "specialization, consistency, [] supportability, . . . [and] [o]ther factors 'which tend to support or contradict the opinion.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *see also* 20 C.F.R. § 416.927(c)(1)-(6).

Here, it is clear that the ALJ properly considered and justified the weight he gave Dr. Hundley's opinion. During her examination, Waddy stated that she maintained a close friend who she visited. She did state that she had trouble performing personal hygiene tasks but specified that was because she recently had surgery. She did not claim that symptoms of anxiety or depression hindered her ability to perform these tasks. She also spoke to the limited nature of her anxiety spells, stating she only experienced symptoms 3-4 days at a frequency of 1-2 times per month. These all point to the lack of supportability of Dr. Hundley's ultimate opinion by the findings in the report.

Further, Waddy's testimony at the hearing was not consistent with Dr. Hundley's opinion that her anxiety created a marked limitation on her ability to perform and adapt to a work environment. She testified that she engaged in a variety of daily tasks such as preparing meals, washing dishes, laundry, personal grooming, grocery shopping, paying bills, taking care of pets, and maintaining a friendship. [R. 17-1 at p. 43-45]. When directly questioned by the ALJ on which impairments prevented her from working, Waddy did not mention anxiety or any symptoms of anxiety. [R. 17-1 at p. 38-39].

Further, as the Commissioner points out, state psychologists Corine Samwell and Dan Vandiver conducted a review of Waddy's record during the administrative proceedings, both concluding that Plaintiff was not subject to severe mental impairment. [R. 17-1 at p. 67-68; 81-83]. In explaining their conclusions, both Samwell and Vandiver stated that they assigned little weight to Dr. Hundley's opinion because it was a "snapshot evaluation" and inconsistent with the actual observations and statements by Waddy during the examination. [R. 17-1 at p. 68; 83]. Particularly, they both pointed out that Waddy reported to Dr. Hundley that she had no issues socializing with friends, which in turn was inconsistent with Dr. Hundley's finding that Waddy's ability to interact with others in a work setting was moderately to markedly limited. [*Id.*].

As a whole, the evidence above suggests that the ALJ considered the appropriate factors in weighing Dr. Hundley's opinion and did not err in making the ultimate decision to give it little weight due to inconsistency between the opinion and findings in the report as well as other evidence in the record. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433 (6th Cir. 2012) ("Any record opinion…may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record."); 20 C.F.R. § 416.927. While Plaintiff may be correct that there is evidence in the record to suggest that Waddy's anxiety does rise to a level of creating a marked limitation on her ability to work, that is not enough to warrant remand where there is also substantial evidence supporting the ALJ's decision, as is the case here. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.").

## The ALJ's RFC is supported by substantial evidence

Plaintiff lastly argues that the ALJ's mischaracterization of the evidence led him to err when he did not include any limitations imposed by her mental impairments in her RFC. [R. 22-1 at p. 14]. An RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Therefore, Waddy's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The burden is on the claimant to establish her RFC. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). However, it is the ALJ's responsibility to determine Waddy's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir.2000); 20 C.F.R. §§ 416.945; 416.946. The ALJ's RFC determination must be supported by some medical evidence. *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010).

As this opinion has discussed, the record is replete with substantial evidence supporting the ALJ's conclusion that Claimant's mental impairments of anxiety and depression did not have a limiting effect on her ability to work. Claimant testified that she performed a wide variety of daily tasks on her own, including shopping and doing housework. Two state psychologists reviewed the record and determined that Claimant's mental impairments were not severe. Further, the sporadic nature of Claimant's treatment of her anxiety suggests that Claimant did not perceive her condition to be as limiting as she claims now. Thus, the evidence supports the ALJ's determination that Claimant's mental impairments do not have a limiting effect on her ability to work.

## CONCLUSION

In sum, the ALJ's determination at step two that Plaintiff's mental impairments were not severe was supported by substantial evidence. Further, the ALJ properly justified his decision to give the opinion by Dr. Hundley little weight. Lastly, the ALJ's decision to omit any limitations in Claimant's RFC arising out of her mental impairments was supported by substantial evidence. Thus, **IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment [R. 22] be **DENIED**, the Defendant Commissioner's Motion for Summary Judgment [R. 24] be **GRANTED**, and that Judgment is entered affirming the final decision of the Commissioner.

Signed May 18, 2021.

Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge